COLONIAL PENN FRANKLIN INSUR-
ANCE COMPANY, Appellant,

v.

E. A. MAYFIELD, Appellee.

No. 8400.

Court of Civil Appeals of Texas,
Amarillo.

March 25, 1974.

Rehearing Denied April 29, 1974.

**450**

Stokes, Carnahan & Fields, Richard E. Stokes, Jr., Amarillo, for appellant.

Gibbins & Spivey, Broadus A. Spivey, Austin, for appellee.

ROBINSON, Justice.

This is a workmen's compensation case. The jury's verdict awarding plaintiff compensation for total and permanent incapacity was appealed by the insurance carrier. Affirmed.

By appropriate points of error, appellant challenges the jury findings that on or about July 7, 1971, plaintiff received an injury in the course of his employment which was a producing cause of total and permanent incapacity and that such incapacity was not caused solely by Peyronie's disease arising independently and without aggravation by the injury.

E. A. Mayfield testified to the following sequence of events. He went to work for Northern Propane and Gas Company in 1965. On July 7, 1971, he was delivering drip oil in the course of his employment as carburetor specialist, serviceman, and salesman for Northern Propane. While removing an eighty pound pump from an empty barrel, he slipped on the oil covered surface of the pickup bed, landed on his lower abdomen, and went over and across the barrel's center, smashing his penis. The ensuing pain was so severe that he sat down and "bawled like a baby." Thirty minutes elapsed before he was able to continue the work. No one else was present at the time of the injury. Mayfield told his employer of the injury and showed his injured penis, which had swollen to four times its normal size, to Mrs. Mayfield. By morning it was black and blue. The swelling and discoloration subsided by the third night after the accident, at which time plaintiff and his wife unsuccessfully attempted marital relations. His erect penis was extremely painful and curled around. He has been unable to engage in sexual relations since. He had had no similar problem or trouble with his penis

before the injury. He consulted his family physician on the third day after the injury, who referred him to a specialist, Dr. Naslund, whom he saw on July 15, 1971. Dr. Naslund's treatment never gave him any substantial relief and his condition persists to this day. He took off work at Dr. Naslund's direction from March 23, 1972 to May 10, 1972. He returned to work on June 2, 1972, and was told that he was terminated. Defendant testified that since the injury he had become extremely nervous, "I can't seem to concentrate. I get tied up in stuff, and I get tied up in knots, and I have got to go take me a nerve pill to get settled down, and if things goes all right, why I am all right, but if I go to having a little problem, why then things just go to flying apart, and I just get beside myself and I just have to get up and walk off and leave it and come back later to finish my chores." He testified that the nervousness affected his ability to carry out his duties for Northern Propane because they involved L. P. carburetors and L. P. gas and "you can't afford to make any mistakes, because if you do, you might not be here to make another one. . . ." He also sold appliances and went out and got new customers and he "can't meet the public anymore." After his discharge he tried driving a tractor and odd jobs. He was unable to drive the tractor because the vibration caused a "hurting" to come back in his penis and through his lower back. At the time of trial he was employed at Amstar Sugar as a guard on their gates. He stated, "Well, I get there and sit there and twiddle my thumbs and chew the erasers off pencils, and just all but want to pull my hair just sitting there. I am not used to sitting. I need to be doing something." He "flies off the handle" with the people he deals with on his present job. He never had this problem before the injury. His condition is not improving.

Appellee offered testimony from customers of Northern Propane that since the date of the injury there had been a change in Mayfield's personality; that he had become a "loner"; that he was now nervous and irritable and his ability to perform a job in which he had to meet the public was adversely affected. His daughter testified that the least little thing irritates him and he will fly off the handle before he even stops to think; that previously any job that he did had to be just so, but that now he does not have the patience that he used to; that he will just "half" do it or just get up and leave it. Mrs. Mayfield testified he attempted to help in a cafe that she had taken over; that he flies off the handle, "which he never did do before," and that his temper was too short to work in a public place like that.

The only medical testimony was by Dr. Naslund's deposition, which was first offered by appellant. Thereafter, appellee offered portions of the deposition. The testimony of Dr. Naslund was in substance as follows: He first saw Mayfield on July 15, 1971, and diagnosed his condition as Peyronie's Disease. Mayfield's objective symptom was a small palpable plaque induration on the dorsum of the penis. Such a plaque is slow developing and can be totally self limiting. Deformity and pain can result in the penis, depending on the location of the plaque in question. Mayfield told Dr. Naslund that he had "pain on erection and severe deformity." The doctor testified that it is not uncommon for men to become nervously agitated and upset with any condition involving the penis and quite common with Peyronie's to have a true nervous aberration. Mayfield told him that his nerves were bothering him and related feelings that he was "not a man anymore." Naslund treated Mayfield for the nervous aberration that he was having. In Naslund's opinion, the traumatic injury on July 7, certainly had a relationship to Mayfield's complaints on July 15 and thereafter, in that it certainly focused the man's attention and observation to the penis. Mayfield told the doctor in March of 1972 that when he unloaded a load of oil the penis started swelling and

subsided by the next morning. This symptom has no relation to Peyronie's as Naslund knows it.

Dr. Naslund's testimony with regard to whether an injury on July 7 caused a previously asymptomatic Peyronie's to cause pain and deformity in the penis and the concomitant nervous aberration follows verbatim:

"Q. And if this Peyronie's Disease, condition, was there, but had never been bothering him, such as he described to you later, and a traumatic blow had occurred to the penis on July 7th, would you be able to say in reasonable medical probability that that traumatic blow, along with what had already existed, caused or brought about the condition?

"A. Precipitated . . .

"Q. Precipitated, if you will.

"A. Precipitated a response . . . I think it could be . . . I can't say proved.

"Q. I'm just asking for reasonable medical probability.

"A. But it could have precipitated a response on the patient's part, yes."

■ In Parker v. Employers Mutual Liability Ins. Co. of Wis., 440 S.W.2d 43 (Tex.1969), the Supreme Court reviewed three methods of establishing causal relationship between injury and incapacity in workmen's compensation cases. Summarized, these methods are (1) general experience or common sense; (2) sequence of events plus scientific generalizations testified to by a medical expert; and (3) testimony of probable causation articulated by a medical expert.

■ Causal connection always rests in reasonable probabilities. In each case the ultimate test is the same, but the nature of the evidence required to submit the issue to the jury varies with the current state of common and medical knowledge concerning the disabling condition or disease, and with the probative effect of the sequence of events between injury and disability.

■ In certain cases, particularly those involving cancer where the causal base is the subject of dispute in the medical profession, causation is a question of science determinable only from the testimony of expert medical professionals. Insurance Company of North America v. Myers, 411 S.W.2d 710 (Tex.1966); American Casualty & Life Co. v. Gueringer, 205 S.W.2d 423 (Tex.Civ.App.—San Antonio 1947, no writ). In such cases the etiology is sufficiently complex that it can be understood only by a medical scientist. To permit a jury to decide the question of probable cause in the absence of medical testimony that the condition was in reasonable probability caused by the injury would in such a case permit the jury to decide by speculation and conjecture.

■ Nevertheless, where, despite uncertainty, medical science has been able to develop criteria to determine the probability of causal relationship between injury and disability and where the injury is not so complicated as to preclude the jury's evaluation of the sequence of events between injury and disability, the jury is permitted to consider testimony of medical possibilities or other scientific generalizations together with the particular sequence of events to determine for itself reasonable medical probability from the evidence as a whole. Trinity Universal Ins. Co. v. Walker, 203 S.W.2d 308 (Tex.Civ.App.—Austin 1947, writ ref'd n.r.e.). This has been held to be proper even in cancer cases where an uncomplicated traumatic injury has been so related to the onset of cancer at the point of injury as to allow the jury to decide whether the injury was in reasonable probability the cause of the cancer. Traders & General Ins. Co. v. Turner, 149 S.W.2d 593 (Tex.Civ.App.—Fort Worth 1941, writ dism'd jdgmt. cor.). See Parker v. Employers Mutual Liability Ins. Co. of Wis., supra.

■ Likewise, lay testimony alone may be sufficient to prove producing cause where the general experience of men is such that they can anticipate that the disability in question would follow the injury proved. But even in those cases in which medical testimony is unnecessary, the lay testimony must prove that the injury in reasonable probability caused the claimed result. Griffin v. Texas Employers' Insurance Association, 450 S.W.2d 59, 61 (Tex. 1969).

The Supreme Court stated in Insurance Company of North America v. Myers, supra, that reasonable probability is determined by the substance of the testimony of the expert witness and does not turn on semantics or the use by the witness of any particular term or phrase. Therefore, we have considered the testimony of Dr. Naslund in its entirety. We do not find that his testimony amounts to direct expert testimony of probable causation.

The question, then, is whether the evidence taken as a whole is sufficient to support a jury finding that the injury in question was a producing cause of incapacity to labor. In other words, is the medical testimony combined with the sequence of events sufficient to create a reasonable medical probability?

■ Dr. Naslund's testimony was that Peyronie's can be totally self limiting, that the injury on July 7 could have precipitated the onset of symptoms in a previously existing but asymptomatic Peyronie's disease, and that it is quite common in Peyronie's to have a true nervous aberration. Appellee has offered evidence that he had no problem before the injury, of the painful nature of the original traumatic injury, of the immediate onset of symptoms and development of nervous problems, and of the symptoms continuing to date of the trial. The evidence shows a strong, logically traceable connection between cause and result which, when considered with the medical testimony, is sufficient to support a jury finding that the traumatic injury to

the penis in the course of Mayfield's employment, aggravated by precipitating symptoms, a previously asymptomatic Peyronie's condition and that the onset of these symptoms resulted in a nervous aberration or condition which disabled Mr. Mayfield as a workman.

■■ A nervous condition which debilitates an individual is compensable under Texas workmen's compensation law. Clayton v. Employers Mut. Liability Ins. Co. of Wis., 480 S.W.2d 487, 490 (Tex.Civ.App.—Waco 1972, no writ). Disabling neurosis produced by an injury is a disease. Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345 (1948). Such a disease is a part of the injury itself not a result of the injury. Traders & General Ins. Co. v. Weatherford, 124 S.W.2d 423, 430 (Tex.Civ.App.—Eastland 1939, writ dism'd jdgmt. cor.).

■ It is well settled that a jury can find total and permanent disability from the testimony of the parties and lay witnesses alone. Texas Employers' Insurance Association v. Fletcher, 356 S.W.2d 359 (Tex.Civ.App.—Texarkana 1962, writ ref'd n.r.e.). Although lay witnesses ordinarily will be prohibited from expressing an opinion that the injuries are total and permanent, " . . . the factual testimony of a claimant alone, or of other lay witnesses, will support a jury finding of total and permanent disability. The jury may reasonably infer total and permanent disability from circumstantial evidence. And this is true though the lay evidence may be contradicted by the testimony of medical experts." Travelers Insurance Company v. Wade, 373 S.W.2d 881 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.).

■ Further, standing alone, the fact that appellee has found employment as a gateman does not in itself prevent him from recovering for total and permanent disability. The rule was stated in Royal Indemnity Company v. Kennedy, 426 S.W.

2d 615 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.) as follows:

"A judgment will not be reversed merely because there is evidence showing the disabled employee is in fact working and earning money regardless of the amount of money being earned. Such proof constitutes a part of the factual evidence which may and should be taken into consideration by the jury in answering the issues upon incapacity or disability, but does not, as a matter of law, preclude the award of compensation even for total and permanent disability."

The testimony in the case before us is that because of his nervous condition, Mr. Mayfield, a former carburetor specialist, serviceman, and salesman, is no longer able to perform the tasks of which his work was comprised or to meet and deal with the public. He suffers from a nervous aberration or condition which makes him unable either to concentrate or meet people. Thus, there was evidence from which the jury could find that Mr. Mayfield was totally and permanently disabled from performing the usual tasks of a workman as well as the tasks of his former employment. Even in his undemanding work as a gateman, his disability seriously interferes with his work. Although regularly employed, a workmen's compensation claimant may be totally disabled if the work causes him serious discomfort or unreasonable risk. Standard Fire Insurance Company v. Simon, 474 S.W.2d 530 (Tex.Civ.App.—Dallas 1971, no writ).

After a careful consideration of the evidence, both supporting and contrary to the verdict, we are of the opinion that the evidence is sufficient to support the jury's answers to each of the special issues and the verdict is not against the great weight and preponderance of the evidence so as to be unjust.

By his final point of error appellant asserts that appellee committed an intentional fraud upon the court and intentionally perjured himself by testifying that he had never before July 7, 1971, had any problems with the erection of his penis or a crook in his penis or any difficulty in having or attempting to have sexual intercourse and that all of his problems occurred after July 7, 1971. This point arises by virtue of the fact that on the hearing on defendant's First Amended Motion for New Trial, Mr. Mayfield testified that he first arrived at the date of injury as being July 7, 1971, by guess. By the time of the hearing, he had determined that July 7, 1971 was a Wednesday and concluded that the accident happened on the previous Friday.

The trial court properly denied the motion for new trial. This evidence of a few days difference in dates is immaterial. Evidence of immaterial or collateral matters does not provide a ground for a new trial. Davis v. Texas Employers' Ins. Ass'n., 257 S.W.2d 755 (Tex.Civ.App.—Eastland 1953, no writ). The most that the record reveals is that Mr. Mayfield's memory was faulty, and imperfect memory is not a basis for a finding of fraud.

The judgment of the trial court is affirmed.