HARTFORD ACCIDENT & INDEMNITY
COMPANY, Appellant,

v.

Franklin L. WILLIAMS, Appellee.

No. 8446.

Court of Civil Appeals of Texas,
Amarillo.

Oct. 31, 1974.

Rehearing Denied Nov. 25, 1974.

Crenshaw, Dupree & Milam, Cecil Kuhne, Lubbock, for appellant.

Gibbins & Spivey, Broadus A. Spivey, Austin, for appellee.

ROBINSON, Justice.

The trial court entered judgment on the jury verdict for total and permanent incapacity as a result of injuries suffered by plaintiff when his hand was pulled into a meat auger in the course of his employment. Affirmed.

By the first sixteen points of error defendant insurance company contends there is no evidence and insufficient evidence to support jury findings that plaintiff Franklin L. Williams sustained an accidental injury to his body on or about June 1, 1972, which resulted in total and permanent incapacity, that plaintiff's injury was not confined to his right thumb and index finger, hand or arm, and that plaintiff's incapacity was not caused solely by the loss of use of his right thumb and index finger, hand, or arm.

Williams testified that on June 1, 1972, as an employee of Missouri Beef Packers, he was using a hook to clean out the auger of a large machine used to transfer hamburger meat into boxes. The auger caught the meat hook, pulling his hand into the machine and pulling Williams over the top of the auger until his shoulder was up against the bottom of the auger bin. Williams thought that his feet were lifted off the ground. He was taken to the hospital where surgery was performed for severe injuries to his thumb and index finger. He remained in the hospital from June 1 to June 5, and from June 9 to June 16, the second time for an infection that developed in the wound. Later in the summer from August 28 to August 31, he returned to the hospital for further surgery. Dr. Norbert Bublis, an orthopedic surgeon, was his physician at all times. Williams testified that when he went into the hospital the second time on June 9, he told Dr. Bublis that he was suffering from pain in his shoulder. He said that he continued to see Dr. Bublis periodically at which times he mentioned the shoulder to the doctor, but the doctor would examine and treat only Williams' finger and thumb. Dr. Bublis first made notes of the pain in plaintiff's shoulder on September 26, 1972. On November 11, Dr. Bublis examined plaintiff's arm, shoulder and neck, and found tenderness over the greater tubercle of the humerous. Thereafter his shoulder was X-rayed for the first time and the X-ray revealed increased density over the greater tubercle of the humerous. Dr. Bublis testified that that could account for the pain in Williams' shoulder. Dr. Bublis tested Williams for gout and, finding at the highest point in the normal range on the serum uric acid test, gave Williams gout medicine although he did not make a diagnosis of gout. Dr. Bublis testified that traumatic arthritis and gout may look similar; that traumatic arthritis is permanent; that it could be caused by a severe pulling or jerking of the joint, and that ordinarily such arthritis would show up on an X-ray about two months after the trauma. He was unable to make a diagnosis of traumatic arthritis or to correlate the neck and shoulder complaints with the injury in part because according to his recollection the complaints came at such a late date. However, he could not rule out that Williams had traumatic arthritis in his shoulder.

Because of the pain in his hand, Williams was unable to continue working for Missouri Beef Packers. He was told by Dr. Bublis to quit and he did quit. He went to work doing general farm work in January of 1973. He cannot use his hand to drive the tractors even though they have power steering because the vibration makes it ache. He is able to drive a pickup with one hand. His right hand and shoulder bother him as he does farm work. Although his shoulder gets particularly tight in winter, it constantly bothers him and he does not know how long he can keep on as he is doing. He testified that a job like feeding, which should take him an hour and a half, would take half a day. Williams' employer, L. T. Woods, testified that he had had several conversations in which he told Williams that if he did not make him a hand he was going to have to let him go, but that in his, Woods, present condition he felt as though he were going to keep him on.

Williams has a tenth grade education and no specialized training, his wife is not employed, and his children are not old enough to work.

In weighing testimony, the jury may accept all, part or none of the testimony of any one witness, or it may accept part of one witness's testimony and part of another's. Blackburn v. Cooner, 509 S.W.2d 641 (Tex.Civ.App.—Amarillo 1974, no writ), and cases cited therein. In reaching its conclusion, the jury may blend the evidence and draw reasonable inferences therefrom. Texas Employers' Ins. Association v. Stephenson, 496 S.W.2d 184 (Tex.Civ.App.—Amarillo 1973, no writ).

In the present case, the jury heard evidence that Williams had not had a problem with his shoulder before the injury, that he was jerked up and over the meat auger, coming to rest with two of his fingers in the auger and his shoulder against the auger bin. Williams testified to the onset of pain in his shoulder which he said he mentioned to Dr. Bublis during the June 9 hospitalization, but which the doctor did not specifically examine, treat, and X-ray until more than four months after the original shoulder complaints. Dr. Bublis testified that the impairment of the shoulder was not an extension of the injury to the hand. He testified as to the nature and cause of traumatic arthritis and could not rule out traumatic arthritis in Williams' shoulder.

■ The evidence presents scientific generalizations testified to by a medical expert and a logical, traceable sequence of events resulting in disability. Such evidence is sufficient to submit the question of causation to the jury. Parker v. Employers Mutual Liability Ins. Co. of Wis., 440 S.W.2d 43 (Tex.1969); Colonial Penn Franklin Insurance Co. v. Mayfield, 508 S.W.2d 449 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.).

■ After a careful consideration of all the evidence including that contrary to the verdict as well as that in support of the verdict, we are of the opinion that the evidence is sufficient to support the jury findings that plaintiff Williams sustained an injury to his body on June 1, 1972, which was not confined to his right thumb and left index finger, to his hand, or to his arm and that plaintiff's incapacity is not caused solely by injury to his thumb and finger, his hand, or his arm.

■■ We next consider the question of sufficiency of the evidence to support the jury's finding of total and permanent incapacity. It is well settled that the extent and duration of incapacity are at best estimates of the jury and that findings of total and permanent disability may be inferred from circumstantial evidence produced by lay witnesses even if contradicted by medical experts. Maryland Casualty Company v. Davis, 464 S.W.2d 433 (Tex.Civ.App.—Amarillo 1971, writ ref'd n.r.e.); Texas Employers' Insurance Ass'n. v. Washington, 437 S.W.2d 340 (Tex.Civ.App.—Dallas 1969, writ ref'd n.r.e.). Further, the fact that an injured workman has

been able since the injury to earn money, will not as a matter of law, preclude a jury finding of total and permanent disability. Davies v. Texas Employers' Ins. Ass'n., 29 S.W.2d 987 (Tex.Comm'n App.1930); Texas State Highway Department v. Kinsler, 230 S.W.2d 364 (Tex.Civ.App.—Beaumont 1950, writ ref'd). In Consolidated Underwriters v. Whittaker, 413 S.W.2d 709 (Tex.Civ.App.—Tyler 1967, writ ref'd n.r. e.), the court stated:

> "The rule is established in this state that the fact that an injured employee resumes work after injury, but only under the whip of necessity, does not necessarily preclude a finding of total permanent disability; the latter issue remains, nevertheless, one of fact to be passed upon by the jury."

■ Both L. T. Woods and plaintiff testified to the problem plaintiff had in using his hand, arm, and shoulder and to the extreme difficulty plaintiff encountered in doing farm labor. Plaintiff testified that his condition was not improving, and Dr. Bublis testified that traumatic arthritis was a permanent condition. The injury to plaintiff's thumb and index finger on his right hand and consequent loss of grip and pain on use is amply supported by the evidence. We conclude that the evidence viewed as a whole is sufficient to support the jury finding of total and permanent disability.

By point of error no. 17, appellant complains of the action of the trial court in excluding proffered impeachment testimony of prior criminal violations and convictions of the plaintiff. In defendant's formal bill of exception, plaintiff admitted that in 1971, he used credit cards stolen by a friend, but he stated that he believed the cards were borrowed rather than stolen; that in June of 1969, he was fined $40 for using abusive language to a police officer; that in December of 1967, he was convicted of assault with intent to murder and given a three year probated sentence; that in May of 1966, he was fined $40 for using

loud and profane language in a public place; and that in July of 1963, he was fined $178 for carrying a concealed weapon.

■ In the impeachment of a witness, the inquiry should be confined to his general reputation for truth and veracity and should not extend to his general moral character unless the attack on his general moral character is by (1) proof of a charge or indictment for any offense involving moral turpitude when the witness presently admits that he was guilty of such charge, or (2) proof of a conviction of any offense involving moral turpitude. Compton v. Jay, 389 S.W.2d 639 (Tex.1965); Texas & N. O. Ry. Co. v. Parry, 12 S.W. 2d 997 (Tex.Comm'n App.1929, holding approved). Further, to the general rule concerning admissibility is appended a remoteness exception. The Supreme Court stated the rule in Landry v. Travelers Insurance Company, 458 S.W.2d 649 (Tex. 1970) as follows:

> "The . . . conviction must not be too remote; that is, the conviction must have been 'sufficiently recent in time to have some bearing on the present credibility of the witness.' * * * * * 'From a review of both civil and criminal cases it would appear that civil courts have generally held that such a matter depends upon circumstances presented and that the question should usually be left to the discretion of the trial judge. In exercising his discretion the trial judge has an opportunity to consider and weigh all the facts and circumstances of that particular case. Only for abuse of discretion is it held that such testimony will call for a reversal.' "

■ We conclude that the trial court properly excluded the evidence of the three offenses not involving moral turpitude: unlawfully carrying arms, Thomas v. State, 482 S.W.2d 218 (Tex.Cr.App.1972); use of loud and profane language in a public place, Taylor v. State, 82 Tex.Cr.R. 210, 199 S.W. 289 (1917), and use of abusive

language to a police officer. Furthermore, the transaction involving use of stolen credit cards was properly excluded because this record does not show that plaintiff was charged, or indicted for that act. Associated Employers Lloyds v. Tullos, 197 S.W.2d 210, 213 (Tex.Civ.App.—Beaumont 1946, writ ref'd n.r.e.); Texas Employers' Ins. Ass'n. v. Drayton, 173 S.W.2d 782, 789–790 (Tex.Civ.App.—Amarillo 1943, writ ref'd w.o.m.).

■ Assuming that the offense of assault with intent to murder is one involving moral turpitude, it was nevertheless within the discretion of the trial court to exclude evidence of this conviction which was five years and six months prior to trial. Landry v. Travelers Insurance Company, supra.

■ By points 18 and 19, appellant contends that the trial court erred in conditionally submitting certain corollary issues so that the jury was not required to answer the corollary issues unless the preceding confinement issue was answered in the affirmative. Appellant cites no authority for the proposition that such a conditional submission is improper. He urges, however, that the submission tended to influence the jurors to answer the confinement issues in the negative so as to more speedily complete the answers to the issues, particularly so because one of the jurors had approached the judge after the jury was sworn and asked to be excused because he was expecting house guests. The court qualified defendant's bill of exception with regard to the incident to show that the juror's remark was made in jest and that the juror did not give any impression of being unduly restive. Even assuming that such a communication violated the spirit or even the provisions of the rules, it does not appear that there was probable harm as a result of either the communication or the conditional submission of the corollary issues. We, therefore, overrule appellant's points of error nos. 18 and 19. See Ross v. Texas Employers' Insurance Ass'n., 153 Tex. 276, 267 S.W.2d 541 (1954).

By special issues nos. 14 through 19, the jury was asked if it found from a preponderance of the evidence that the injury to the plaintiff was not confined to his right thumb and right index finger, right hand or right arm, and that plaintiff's incapacity was not caused solely by the loss of use of plaintiff's thumb and index finger, right arm below the elbow, or right arm.

In connection with each such issue, the defendant requested an instruction, similar, but directed to the particular inquiry, to the one quoted below:

> "If you find from a preponderance of the evidence that the injury of plaintiff was not confined to his right thumb and right index finger, you will answer the special issue 'It was not confined,' otherwise, you will answer such special issue 'It was confined.'"

By points of error 20–25 defendant complains of the refusal of the court to submit the requested instruction in conjunction with special issues nos. 14 through 19.

The special issues submitted by the court place the burden of proof on the plaintiff. The instructions requested by the defendant likewise place the burden of proof on the plaintiff. The special instructions in no way materially alter the special issues as submitted. Defendant's points of error 20–25 are therefore overruled.

We find no reversible error and the judgment of the trial court is affirmed.