Christopher Kim PARKER, Appellant,

v.

The STATE of Texas, Appellee.

No. 67947.

Court of Criminal Appeals of Texas, En Banc.

Sept. 21, 1983.

Philip S. Greene, Houston, for appellant.

Felipe Reyna, Dist. Atty., and John W. Segrest, Asst. Dist. Atty., Waco, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal is taken from a conviction for aggravated robbery. Punishment was assessed by the jury at seventy-five (75) years' imprisonment and a $10,000.00 fine.

In a sole ground of error appellant contends his cross-examination of the accomplice witness,[1] Richard Ferrell, was impermissibly limited, and he was unable to bring before the jury a plea bargain between the witness and the State and other evidence to show motive, animus, bias, ill feeling, etc., on the part of Ferrell.

Lorene Diver, cashier at the Surf and Sirloin Restaurant in Waco, testified she was robbed of $1,400.00 about 8:30 p.m. on June 29, 1980 by a man with a shotgun whom she identified as the appellant.

In addition to other State's evidence, the State called Ferrell as a witness. He related that on June 29, 1980, Doug Davis and appellant came to his Waco home. He knew Davis, but had never before seen appellant. They later left in a Lincoln automobile, but returned about 6 p.m. and asked Ferrell to go eat with them. The three men then went to the Surf and Sirloin Restaurant. While there, appellant mentioned "robbing this son of a bitch." Ferrell thought he was joking. After they finished their meal and paid for it, Ferrell related they went to the Lincoln in the parking lot. Appellant then said, "Watch me get my money back" and removed from the car a gun, hat and shirt which he used as a mask. Ferrell observed the appellant return to the restaurant, and when he came out, he told Davis, who was driving the Lincoln, to "Hook ass." They drove to Ferrell's residence, where Davis offered Ferrell $500.00 from the robbery proceeds, which Ferrell refused. Ferrell told appellant to put the hat, shirt and gun in or near a tree in his yard. Later Ferrell left with appellant in the Lincoln to get some ice cream

for Ferrell's son. They were spotted by an officer investigating the robbery and were stopped and arrested after a chase. Ferrell was charged with the offense and spent 33 days in jail. Ferrell denied any knowledge that a robbery was going to occur and denied participating in the alleged offense.

During the cross-examination of Ferrell, appellant's counsel asked to develop a matter outside the jury's presence. In the jury's absence Ferrell revealed that approximately a month before the robbery he was charged with possession of methamphetamine, possession of marihuana and unlawfully carrying a pistol. These charges apparently grew out of the same incident. A week before the robbery trial, he entered a guilty plea to the marihuana charge. His punishment was assessed at three days in jail and a $300.00 fine. He was given credit for the time already spent in jail and the methamphetamine possession and unlawfully carrying charges were dismissed. He stated he was not promised anything; that the State had no case against him on other charges. Ferrell related that a day or two before his testimony his attorney had contacted him and asked him to call the "D.A." He had called that day and she (prosecutor) had requested him to testify and he agreed. He denied this was part of a plea bargain because he had taken "a polygraph test on this robbery."

Richard McCall testified he was the attorney for Ferrell for all four cases. He reached a plea bargain on the marihuana, methamphetamine and pistol charges, and had offered on Ferrell's behalf to have him take a polygraph test concerning the robbery charge. These agreements were with Karen Matkin, prosecutor in the instant case. He understood the robbery, methamphetamine and pistol charges had been dismissed or "retired." He denied there was any agreement for Ferrell to testify in the instant case.

Karen Matkin testified she had agreed to the plea bargain regarding the metham-

1. The court charged the jury on the law concerning accomplice witnesses and submitted to the jury the fact issue of whether Ferrell was an accomplice witness.

phetamine, marihuana and pistols cases.[2] She had further agreed to dismiss the robbery case if Ferrell passed a polygraph test, "and showed he had no involvement, as far as prior knowledge, ... driving, and that sort of thing ...." The robbery charge had been dismissed or "retired."[3] Matkin related that early in her conversations with McCall, prior to discussing a polygraph test, McCall had offered to have Ferrell testify in the instant case. She had not accepted the offer because at the time she thought Ferrell was involved. She denied that Ferrell's testimony was part of any plea bargain. Matkin acknowledged that prior to the trial she called McCall and asked if he would have Ferrell contact her if he were willing to testify. Ferrell called her and agreed to testify.

When appellant's counsel sought to offer this evidence before the jury, the offer was refused by the court.

In closing argument the prosecutor told the jury the evidence showed that Ferrell was an innocent bystander, a victim of circumstances, and "didn't know what he was getting into ...." and that the "reason we brought you Richard Ferrell was to present as complete a picture as we possibly could."

It is argued that Ferrell was a material witness for the prosecution giving details of the appellant's action just before and after the robbery. Appellant contends the jury heard only one side of Ferrell, that he was a victim of circumstances and had been charged with robbery. Appellant argues he should have been allowed to show the robbery charges had been "retired" by the State, that a plea bargain between Ferrell and the State on other charges had been agreed upon shortly before trial, and the

other circumstances shown above. State argues the evidence shows that testifying was not a part of any agreement or plea bargain with Ferrell, and the court properly excluded the offered testimony.

In *Simmons v. State,* 548 S.W.2d 386 (Tex.Cr.App.1977), this court, after reviewing *Evans v. State,* 519 S.W.2d 868 (Tex.Cr.App.1975), and *Burkhalter v. State,* 493 S.W.2d 214 (Tex.Cr.App.1973),[4] among other cases, wrote:

"These cases underscore the well-established rule (and exception to Art. 38.29, V.A.C.C.P.) that great latitude is allowed the accused in showing any fact, including pending charges, which would tend to establish ill feeling, bias, motive, and animus on the part of any witness testifying against him."

It has been held that the erroneous denial of this right of confrontation is "constitutional error of the first magnitude and no amount of showing of want of prejudice [will] cure it." *Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974); *Evans v. State,* supra; *Spain v. State,* 585 S.W.2d 705, 710 (Tex.Cr.App. 1979).

In *Spain v. State,* supra, a theft case, we held that the trial court's refusal to allow the defendant to show that Gilmore, a State's witness, had received a probated sentence for the same offense, was reversible error.

In *Spain v. State,* supra, this court wrote:

"In *Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931) the Supreme Court reviewed a trial court's refusal to allow the defendant to elicit

---

2. The witness observed there were some pending indictments against other individuals in the methamphetamine transaction and she was prosecutor in those cases. The other individuals are not named, but Ferrell explained when he was arrested he was in his cousin's truck.

3. Matkin stated that the pending cases against Ferrell had been "retired." She explained "... we don't dismiss cases here. What we do is, we retire the file ... and all police agencies are informed ...."

4. In *Evans* murder convictions were overturned because the defendants were prevented from showing the jury that the State's main witness had a sodomy indictment pending against him. A murder conviction was reversed in *Burkhalter* because the defendant was prevented from showing the jury that the State's main witness may have been enjoying a promise of leniency or immunity on his indictment as a principal to the murder.

the witness' current address. The Supreme Court stated:

> ' "It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them.... To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to fair trial." 282 U.S. at 692, 51 S.Ct. at 219.'

See *Saunders v. State,* 572 S.W.2d 944.

"Just as *Alford* held that the defendant is not required to show what facts the cross-examination would have revealed in order to establish prejudice, the appellant in the present case is not required to show that his cross-examination would have affirmatively established the facts sought.

"An effective cross-examination encompasses more than just the opportunity to elicit testimony to establish the existence of certain facts. The cross-examiner should be allowed to expose the limits of the witness' knowledge of relevant facts, place the witness in his proper setting, and test the credibility of the witness. The failure to affirmatively establish the fact sought does not prevent the cross-examination from having probative value in regard to the witness' credibility. An unbelievable denial of the existence of a fact can be even more probative as to lack of credibility than an affirmative admission of the fact.

"We hold that the trial court erred in limiting the cross-examination of Gilmore under the facts of this case."

*Spain* answers the State's argument that the evidence does not show that testifying for the State was a part of any agreement or plea bargain. As to the State's additional argument that Ferrell had nothing to gain by testifying favorably for the State because the charges against him had been dismissed or "retired," it appears this contention has been answered adversely to the State in *Simmons v. State,* supra. There it was observed that although the charges against a witness may have been dismissed, there is always a possibility that the State may cause the charges to be refiled if it so chooses.

Very recently in *Harris v. State,* 642 S.W.2d 471 (Tex.Cr.App.1982), the following observations were made by this court:

> "The essential policy underlying the Sixth Amendment right to confrontation is to give the accused an *opportunity* to cross-examine the witnesses against him. *Pointer v. Texas,* 380 U.S. [400,] 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). This opportunity to expose falsehood and elicit the truth has been oft characterized as one of the safeguards 'essential to a fair trial.' 380 U.S. at 404, 85 S.Ct. at 1068.

> " 'Cross-examination is the principal means by which the believability of the witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, *the cross-examiner is not only permitted to delve into the witness' story* to test the witness' perceptions and memory, *but* the cross-examiner has traditionally been *allowed to impeach, i.e., discredit, the witness.'* *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, [1110,] 39 L.Ed.2d 347 (1974).

> "Thus, extreme prejudice ensues from a denial of the opportunity to place a material witness in his proper setting as regards his testimony. Accordingly, eliciting an admission that the witness has been accused of or incarcerated for a crime may be pertinent to show that his 'testimony was biased because given under promise *or* expectation of immunity, *or* under the coercive effect of his detention by officers of [government who are]

conducting the present prosecution. * * Even if the witness were charged with some other offense ..., [a defendant would be] entitled to show by cross examination that his testimony was affected by fear or favor growing out of his detention.' *Alford v. United States,* 282 U.S. 687, 693, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931).

"In *Jackson v. State,* 482 S.W.2d 864, 868 (Tex.Cr.App.1972), it was reiterated, 'Evidence to show bias or interest of a witness in a cause covers a wide range and *the field of external circumstances from which probable bias or interest may be inferred is infinite.* The rule encompasses *all facts and circumstances which,* when tested by human experience, *tend to show that a witness may shade his testimony* for the purpose of helping to establish one side of the cause only....'

"It is clear that the right to cross-examination for the purpose of affecting a witness' credibility is at least dual: 'A witness *may be asked* any question, the answer to which may have a tendency to affect his credibility. *And* if he denies anything that would show a motive for, [sic] or animus to, testify against a party, it *may be shown* by other witnesses and by independent facts.' 482 S.W.2d at 857. Apparent then, is the fact that when the crossexaminer is improperly denied the *opportunity to ask* a question *and receive* the witnesses' answer for consideration by the fact-finder, he may concomitantly be denied the right to establish facts which would illustrate the true circumstances bearing on the issue by extrinsic proof. See *Spain v. State,* 585 S.W.2d 705 (Tex.Cr.App.1979); *Castro v. State,* 562 S.W.2d 252 (Tex.Cr.App.1978); *Randle v. State,* 565 S.W.2d 927 (Tex.Cr.App. 1978); *Jackson* (1972), supra; *Curry v. State,* 72 Tex.Cr.App. 463, 162 S.W. 851 (1913). In such a case the accused's right to *effective* confrontation is thoroughly frustrated, and we now hold a frustration of that right is presented in the instant case." (Footnotes omitted.) (Emphasis supplied.)

It is clear that appellant's cross-examination of Ferrell was improperly limited, and he was unable to place Ferrell in proper perspective before the jury.

The State argues that any error, in view of the totality of the evidence, was harmless error beyond a reasonable doubt. The State overlooks the fact that the denial of the right of effective cross-examination in this case is "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." *Davis v. Alaska,* supra, 415 U.S. at 318, 94 S.Ct. at 1111. *Simmons v. State,* supra.

We hold that the trial court reversibly erred in limiting the cross-examination of Ferrell and the presentation of the testimony of McCall and Matkin under the circumstances of the case.

The judgment is reversed and the cause remanded.