No. 04-96-00894-CR



Grailand FIELDS,


Appellant



v.



The STATE of Texas,


Appellee



From the 226th Judicial District Court, Bexar County, Texas


Trial Court No. 96-CR-2288


Honorable J. Taylor Brite, Judge Presiding



Opinion by: Tom Rickhoff, Justice


Sitting: Tom Rickhoff, Justice

 Sarah B. Duncan, Justice

 Karen Angelini, Justice


Delivered and Filed: August 26, 1998


AFFIRMED


 Grailand Fields was convicted of murder and sentenced by a jury to eighty years in prison.
He argues that his conviction and sentence should be reversed because the trial court prohibited him
from cross-examining a witness about his criminal history and because the State made improper
arguments to the jury. We affirm.


Factual Background


 On December 11, 1993, as Brady Beauregard and Andre Haygood were standing outside a
friend's residence, a car pulled up and at least three men got out and began shooting at Beauregard
and Haygood. When the shoot-out was over, Haygood had several gunshot wounds, Beauregard was
mortally wounded, and a total of over eighty spent casings, bullets, bullet jackets, and bullet
fragments were at the crime scene.

 One of the first officers at the scene attempted to speak with Beauregard, who stated that "it
was a blue car." Another officer gave chase to a fleeing blue Cadillac. The Cadillac soon came to
a halt and four people exited and escaped on foot. Another car pulled up from the direction in which
the four people had fled and a passenger asked the officer if he was looking for "Greyhound."
Greyhound is Grailand Fields's street name. Several rifles were found in the Cadillac, but no
fingerprints could be lifted from them. A bullet recovered during Beauregard's autopsy was fired
by one of the rifles. It was later discovered that the Cadillac had belonged to Deondre Johnson, who
had been murdered the day before the shoot-out. Haygood and Beauregard were the primary
suspects in that murder.

Limitation on Cross-Examination


 In his first point of error, Fields argues that the trial court erred by limiting his cross-examination of Andre Haygood.

Haygood's Testimony

 Haygood testified on direct that he saw Fields and at least two other men emerge from the
blue Cadillac and begin firing. While he was in the hospital recovering from his wounds, he gave
a statement implicating Fields and two others. Although he recognized his signature on the
statement, he did not remember giving the statement. Haygood acknowledged that the case against
Fields had previously been dismissed because the State could not locate him. When asked why he
finally decided to testify, he said he was doing it for the sake of Beauregard's mother.

 During cross-examination, Fields's attorney asked Haygood how the prosecution located him
for the trial. He replied, "from probation, when I got on probation. Apparently they must have
gotten in contact with my PO" about two or three days before the trial. When the attorney asked him
about Deondre Johnson, Haygood indicated that Johnson had nothing to do with the shoot-out and
that the incident occurred "out of the blue."

 Fields's attorney requested a hearing outside the presence of the jury. At that hearing,
Haygood admitted that he had been convicted of the misdemeanor offenses of unlawful carrying,
marijuana possession, resisting arrest, deadly conduct, and criminal mischief. Haygood was on
probation for these offenses. He also admitted that he had been indicted for felony cocaine
possession, but the charge was dismissed approximately thirty days before the trial of this case.
Haygood testified as follows regarding the circumstances surrounding the dismissal:

 Q: Isn't it a fact that ... the State ... dismissed that case ... approximately 30 days
ago, in anticipation of this case for trial?

 A: No.

 Q: Okay. Why was that case dismissed?

 A: This case was dismissed because my lawyer beat the case.

 ....

 Q: And how was it that he beat the case?

 A: That's something you have to ask him.



 The Court: You know the rules on impeachment, what he can be
impeached by, whatever. You are going into matters that are
nothing to do with that.

 Counsel: Okay.


Fields's attorney argued that the dismissal of the cocaine possession charge indicated that Haygood
may have struck a deal with the State to testify favorably in exchange for the dismissal. He therefore
requested permission to cross-examine Haygood about the dismissal in front of the jury. The
attorney also requested permission to cross-examine Haygood regarding the misdemeanor
convictions because they were crimes of moral turpitude and because his probationary status might
cause him to testify favorably to the State to curry favor with his probation officer. The trial court
refused to allow the requested cross-examination.

 When the cross-examination resumed, Haygood stated that he used to be a member of the
Bloods, that he had been shot three times before this incident, that he had been arrested for
unlawfully carrying a firearm, that the "187" tatoo on his arm referred to murder, that his "CK" tatoo
meant "Crip Killer," that Deondre Johnson was a Crip, and that Fields was Johnson's friend. On
redirect, he testified that during the trial Fields had made threatening gestures toward him, such as
running his finger across his neck.

 During her closing argument, the prosecutor attempted to emphasize the lack of evidence
indicating that Haygood had any ulterior motive to testify against Fields. After noting the
threatening gestures Fields made towards Haygood, she stated:

 [I]f somebody is going to put their life on the line to testify the way that they did,
what more, what more can a person lose? [Haygood] has absolutely nothing to gain.
Nothing. If he had something to gain, if he had some cases pending that the D.A.
was going to dismiss in exchange for his testimony--


At this point, Fields's counsel objected. Although the court overruled the objection, it instructed the
jury to be governed by the testimony in the case.


Arguments on Appeal

 Fields's first point of error states that the trial court erred by refusing him the right to
impeach Haygood with his criminal history. Fields argues that Haygood was the State's most
important witness because he provided the only solid evidence that Fields was present at the scene
of the crime. Given the significance of Haygood's account and considering his claim that he decided
to testify for the sake of Beauregard's mother, Fields argues that he should have been allowed to
explore whether Haygood really testified to improve his own position with the State.(1)

 Rule 609(a)

 Rule 609(a) of the Texas Rules of Criminal Evidence, which was in effect at the time of
Fields's trial, allowed the credibility of a witness to be attacked by evidence that the witness has
been convicted of a felony or any crime involving moral turpitude if the probative value of the
evidence outweighed its prejudicial effect to a party. Because Haygood had not been convicted of
the felony cocaine possession charge, Rule 609(a) did not authorize inquiry about that charge.

 We also conclude that Rule 609(a) did not authorize inquiry about the misdemeanor
convictions because Fields failed to establish that the convictions involved crimes of moral turpitude.
See Chambers v. State, 866 S.W.2d 9, 26-27 (Tex. Crim. App. 1993) (proponent has burden of
showing relevance of particular evidence to issue of bias); Bell v. State, 620 S.W.2d 116, 121 (Tex.
Crim. App. 1980) (misdemeanor marijuana possession does not involve moral turpitude); Thomas
v. State, 482 S.W.2d 218, 219 (Tex. Crim. App. 1972) (misdemeanor offense of unlawfully carrying
arms does not involve moral turpitude); Williams v. State, 449 S.W.2d 264, 265 (Tex. Crim. App.
1970) (resisting arrest does not involve moral turpitude); Patterson v. State, 783 S.W.2d 268, 271
(Tex. App.--Houston. [14th Dist.] 1989, pet. ref'd) (misdemeanor assaultive offenses, such as
reckless conduct, other than those against women, do not involve moral turpitude);(2) Gonzalez v.
State, 648 S.W.2d 740, 742 (Tex. App.--Beaumont 1983, no pet.) (criminal mischief does not
involve moral turpitude); cf. Hutson v. State, 843 S.W.2d 106, 107 (Tex. App.--Texarkana 1992,
no pet.) (misdemeanor criminal trespass does not involve moral turpitude); Hartford Accident &
Indem. Co. v. Williams, 516 S.W.2d 425, 428 (Tex. Civ. App.--Amarillo 1974, writ ref'd n.r.e.) (use
of abusive language to police officer does not involve moral turpitude). 

 Right to Confront Witnesses

 Regardless of any restrictions on cross-examination imposed by court rules, an accused has
a constitutional right to confront the witnesses against him and to demonstrate any bias on the part
of the witnesses. See U.S. Const. amend. VI; Davis v. Alaska, 415 U.S. 308, 315 (1974); Carroll
v. State, 916 S.W.2d 494, 501 (Tex. Crim. App. 1996); see also Guerrero v. State, No. 4-96-00064-CR, slip op. at 7 (Tex. App.--San Antonio, Oct. 8, 1997, pet. ref'd). Although the extent of cross-examination is subject to the sound discretion of the trial court, the court abuses this discretion when
it prevents appropriate cross-examination. See Carroll, 916 S.W.2d at 499.

 To determine whether Fields's right of confrontation was violated, we begin by examining
Carroll. In that case, the court held that a trial court erred by prohibiting a defendant from cross-examining a prosecution witness about the witness's current incarceration, pending criminal charge,
and possible punishment as a habitual criminal. See 916 S.W.2d at 500; see also Alford v. United
States, 282 U.S. 687 (1931). Such cross-examination was appropriate to demonstrate the witness's
potential bias and motive to testify for the State and to show that the witness had a vulnerable
relationship with the State at the time of his testimony. See Carroll, 916 S.W.2d at 500. At a
hearing outside the jury's presence, the witness testified that he had not made a deal with the State,
that he gave a statement regarding the case being tried before he was arrested for the charge pending
against him, that his prior statement was consistent with the testimony he would give at trial, and
that his testimony would not be affected by the case pending against him. See id. at 502 (Mansfield,
J., dissenting). Nevertheless, the court specifically rejected the State's argument that the cross-examination was impermissible because no agreement existed between the State and the witness
which might have affected the witness's testimony. The court held that "the existence of such an
agreement is not determinative. What is determinative is whether appellant was allowed to
demonstrate any possible bias or interest that [the witness] may hold to testify on the State's behalf."
Id. at 500 (emphasis added and citation omitted). The court noted it was possible that even absent
an agreement, the witness believed his testimony would be of later benefit to him. See id.

 The Dismissed Felony Charge

 The State points out that unlike in Carroll, the requested cross-examination in this case dealt
with a dismissed charge, not a pending charge. The State further notes that the record does not show
that the dismissal was on the State's motion. Haygood merely testified that his lawyer "beat the
case." According to the State, a dismissed charge should only be used for impeachment if the
defendant demonstrates that the dismissal was on the State's motion. The cases the State cites for
this argument do not support the State's position. See Parker v. State, 657 S.W.2d 137 (Tex. Crim.
App. 1983); Simmons v. State, 548 S.W.2d 386 (Tex. Crim. App. 1977); Silguero v. State, 654
S.W.2d 492 (Tex. App.--Corpus Christi 1983, pet. ref'd). In both Parker and Simmons, the court
held that for purposes of determining the allowable subjects of cross-examination, there is no
persuasive distinction between dismissed charges and pending charges because it is possible that
dismissed charges may be refiled. See Parker, 657 S.W.2d at 140; Simmons, 548 S.W.2d at 388.
This may be true even if the dismissal was not on the State's motion. In Silguero, the court found
no error in the trial judge's refusal to allow cross-examination regarding a theft charge against a
witness because it had been dismissed at the request of the complaining party. See 654 S.W.2d at
496. Since the complainant had dropped the charges, the possibility of refiling was clearly much less
likely than in the drug case at issue here.

 We find Parker to be particularly instructive. In that case, an accomplice witness testified
for the State. In addition to his involvement in the case being tried, a robbery, the witness had been
charged with possession of methamphetamine, possession of marijuana, and unlawfully carrying a
pistol. A week before the trial, he entered a guilty plea to the marijuana charge, and the other
charges were dismissed. Punishment was assessed at three days in jail and a $300 fine. He testified
outside the jury's presence that the State had not promised him anything and that the State had no
case against him on other charges. The State did not prosecute him for the robbery because he
passed a polygraph test. A day or two before his testimony, his attorney contacted him and asked
him to call the prosecutor. He did so, the prosecutor asked him to testify, and he agreed. The
witness's testimony was supported by the testimony of his attorney and the prosecutor. See Parker,
657 S.W.2d at 138-39. In spite of the uncontradicted testimony of the witness, his attorney, and the
prosecutor that no deal existed, the court of criminal appeals held that the trial court erred by
refusing to allow cross-examination about the dismissed charges. See id. at 141. The court relied
largely on Spain v. State, a case also cited with approval in Carroll. In Spain, the court explained:

 An effective cross-examination encompasses more than just the opportunity
to elicit testimony to establish the existence of certain facts. The cross-examiner
should be allowed to expose the limits of the witness' knowledge of relevant facts,
place the witness in his proper setting, and test the credibility of the witness. The
failure to affirmatively establish the fact sought does not prevent the cross-examination from having probative value in regard to the witness' credibility. An
unbelievable denial of the existence of a fact can be even more probative as to lack
of credibility than an affirmative admission of the fact.


Spain v. State, 585 S.W.2d 705, 710 (Tex. Crim. App. [Panel Op.] 1979) (emphasis added).


 The State's argument seems to us merely a variant of the argument made by the State and
rejected by the court in Spain, Parker, and Carroll. The State would make a showing that the
dismissal was on the State's motion a prerequisite to cross-examination regarding the dismissal. But
placing the burden on the defendant to establish that the dismissal was on the State's motion is
inconsistent with Spain, Parker, and Carroll, in which the defendants were entitled to cross-examine
regarding pending or dismissed charges even though all the affirmative evidence showed that no
agreement existed.

 Under Spain, Parker, and Carroll, Fields was entitled to explore the circumstances
surrounding Haygood's recently dismissed cocaine possession charge in front of the jury.

 Probation for the Misdemeanor Convictions

 The Supreme Court has held that a criminal defendant should be allowed to cross-examine
a prosecution witness regarding the fact that he is on probation because a witness's probationary
status makes him vulnerable to the State and raises an inference of bias. See Davis, 415 U.S. at 317-18. This is precisely the inference that Fields's attorney wanted to develop before the jury. At the
hearing outside the jury's presence, the attorney argued that the fact that Haygood was on probation
for the misdemeanor convictions indicated that "he needs to c[u]rry favor with the State to maintain
the endorsement of his probation officer." This was an entirely appropriate avenue of cross-examination and Fields's attorney should have been allowed to question Haygood about the fact that
he was on probation for the five misdemeanor offenses.

 Harm Analysis

 Having concluded that the trial court should have allowed the requested cross-examination,
we must determine whether the refusal to do so was harmful. To make this determination, we are
required to assume that the damaging potential of the cross-examination was fully realized. See
Shelby v. State, 819 S.W.2d 544, 547 (Tex. Crim. App. 1991). With that assumption in mind, we
must consider the importance of the witness's testimony to the prosecution's case, the overall
strength of the prosecution's case, whether the testimony was cumulative, the existence of evidence
corroborating or contradicting the witness's testimony on material points, and the extent of cross-examination otherwise permitted. See id.

 Obviously, Haygood was a crucial witness for the State. He provided the primary evidence
linking Fields to the murder. But in addition to Haygood's testimony, the State presented evidence
that the assailants were in Deondre Johnson's blue Cadillac, that Beauregard was shot by a bullet
from a gun found in that car, and that a bystander mentioned Fields to an officer chasing the blue
Cadillac. The evidence also established that Beauregard and Haygood were prime suspects in the
murder of Johnson.

 Regarding the extent of cross-examination otherwise permitted, a review of Haygood's
testimony, in light of other evidence presented, reveals several reasons for the jury to disbelieve
Haygood's account. Haygood disclosed that he was on probation and that he believed the
prosecutors located him by contacting his probation officer. He also testified that he had previously
been arrested for unlawfully carrying a weapon. When questioned about Deondre Johnson, he
testified that Johnson had nothing to do with this case, that he had no idea why Fields shot him and
Beauregard, and that the shooting occurred "out of the blue." Yet a police officer testified that
Haygood and Beauregard were the primary suspects in Deondre Johnson's murder. Haygood also
admitted that he used to be a member of the "Bloods," that the "CK" tatoo on his arm meant "Crip
Killer," that Johnson was a Crip, and that Fields was Johnson's friend. From this testimony, the jury
could infer not only that Haygood was a generally disreputable person, but also that it was in his
self-interest to implicate Fields falsely.

 It is not at all rare in a case of this nature that the theory of the State's case is the same as the
defense's, i.e, there were two violent groups. The defense's twist is that this witness cannot be
believed because he is hateful, violent, and beholden to the State. The prosecution's twist is that it
is precisely this witness and victim who would be the targets of a revenge murder. We do not find
a major contest over the character of this witness or any confusion about his prior misadventures.
Indeed, the jury was likely to surmise the reason he was on probation was more serious than the truth
kept from them.

 Considering the extent of Haygood's cross-examination along with the other evidence
presented to the jury, we conclude that the limitation on cross-examination was harmless beyond a
reasonable doubt. See Tex. R. App. P. 44.2(a); see also Carmona v. State, 698 S.W.2d 100, 104
(Tex. Crim. App. 1985) (limitation on cross-examination not reversible error because defendant was
otherwise afforded thorough and effective cross-examination and bias of witness was patently
obvious); Araiza v. State, 929 S.W.2d 552, 557 (Tex. App.--San Antonio 1996, pet. ref'd)
(prohibiting questioning about some of witness's pending criminal charges not reversible error
because cross-examination revealed witness had two convictions, a motion to revoke her probation
had been filed, a warrant was out for her arrest at the time of the crime, she was in jail at the time
of the trial, and if the defendant were convicted the State would not prosecute her son); cf. Shelby,
819 S.W.2d at 550-51 (limitation on cross-examination was harmful considering that it was possible
no crime was committed, the complainant's testimony was contradictory, and the defendant had an
alibi).

Improper Jury Argument


 In his second and third points of error, Fields argues that the trial court erred by allowing the
prosecutor to make improper and incurable arguments to the jury during both the guilt/innocence and
punishment phases of trial.

 The first complained-of argument is the prosecutor's statement at the guilt/innocence stage
that "[i]f [Haygood] had some cases pending that the D.A. was going to dismiss in exchange for his
testimony--" As we noted above, although the trial court overruled Fields's objection to this
statement, it instructed the jury to be governed by the evidence produced at trial. This instruction
was sufficient to cure any prejudice that might have arisen from the statement. See Bauder v. State,
921 S.W.2d 696, 698 (Tex. Crim. App. 1996).

 Fields also argues that the prosecutor impermissibly referred to testimony elicited outside
the jury's presence. The prosecutor argued:

 You must consider, not just Andre, risking his life to testify, but you're really,
really lucky because what you got to hear was testimony, testimony from a witness
that talked about his conduct while you-all were outside the courtroom. This man is
so dangerous and so notorious and so brazen that in a court of law, where it is
supposed to be justice, it's supposed to signify justice, he has the nerve to do this and
this.


This argument was clearly a reference to the testimony that Fields had made threatening gestures to
witnesses during the trial and was not a reference to the testimony elicited outside the jury's presence
regarding Haygood's criminal history. In any event, Fields failed to object to the argument. Thus,
the issue is waived. See Valencia v. State, 946 S.W.2d 81, 82-83 (Tex. Crim. App. 1997).

 During the State's punishment phase closing argument, the prosecutor referred to a prior
aggravated robbery committed by Fields and his cousin Douglas. Fields received probation for the
aggravated robbery. At one point, the prosecutor stated, "Now I was the prosecutor in that case, and
I know how smooth this guy can be. I've heard him testify before, and he smooth-talked that jury
into probation." Fields's attorney objected that this statement amounted to unsworn testimony. The
trial court sustained the objections and instructed the jury to disregard the statement. The prosecutor
also requested the jury to "think about Douglas Fields having gotten 45 years" for the aggravated
robbery. The only evidence on this issue was Grailand Fields's denial that he was aware Douglas
received a 45-year sentence. Fields's attorney objected that there was no evidence to support the
prosecutor's statement, and the court instructed the jury to be governed by the evidence. The court's
instructions to the jury were sufficient to cure any prejudice that might otherwise have resulted from
the prosecutor's statements. See Bauder, 921 S.W.2d at 698.

 Finally, Fields complains of the prosecutor's punishment-phase argument that "it's no
accident that there are more women on this jury than men because defense counsel believes that
women are soft on crime." Fields's attorney objected, arguing the statement was not true and not
in evidence and amounted to unsworn testimony. After the jury retired, the attorney moved for a
mistrial on the additional ground that the statement was sexist. On appeal, Fields argues the
statement attacked his counsel "in a personal way" and unfairly attributed a sexist remark to him.
This argument is not preserved for review because it differs from the grounds stated in Fields's
timely trial objection. See Miranda v. State, 813 S.W.2d 724, 738 (Tex. App.--San Antonio 1991,
pet. ref'd); see also Banda v. State, 890 S.W.2d 42, 62 (Tex. Crim. App. 1994) (objection to
improper jury argument made after jury has recessed is untimely). In any event, the statement,
though foolish, was harmless. The jury received evidence regarding the heinous nature of this crime,
as well as evidence that Fields was a senior member of a gang, that he had a dangerous reputation,
and that he sold drugs. Considering this evidence, we do not believe the statement had a substantial
and injurious effect or influence on the jury's punishment decision. See Tex. R. App. P.44.2(b);
Coggeshall v. State, 961 S.W.2d 639, 643 (Tex. App.--Fort Worth 1998, pet. ref'd).

Conclusion


 For the reasons stated herein, the judgment of the trial court is affirmed.


 Tom Rickhoff, Justice

DO NOT PUBLISH

1. Although Fields's brief focuses on the dismissed cocaine charge, the State addresses the misdemeanor
convictions as well. We will construe Fields's argument to encompass both the dismissed cocaine charge and the
misdemeanor convictions. See Tex. R. App. P. 38.9.
2. The record does not reflect whether any women were involved in the deadly conduct case.



Return to
4th Court of Appeals Opinions