Opinion issued March 4, 2010

 

 

 

 

 

 

 



 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00197-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



JIMMY DARRELL HUSKEY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 56th District Court

Galveston County, Texas

Trial Court Cause No. 08CR2806

 

 



MEMORANDUM OPINION

A jury found appellant, Jimmy Darrell
Huskey, guilty of the felony offense of assault by causing bodily injury to a
family member[1] and
assessed his punishment at confinement for ten years and a fine of $5,000.  In his sole point of error, appellant
contends that the trial court erred in denying his motion to reopen the evidence
to further cross-examine the complainant.

          We
affirm.

Background

The complainant, Denisa Marie Huskey,
testified that on the evening of July 18, 2008, after she and appellant, her
husband, had returned to their hotel room after eating dinner, he suddenly
turned around and said, “do you want to fight, Bitch.”  He then hit her with a telephone on the left
side of her head.  She explained that
appellant’s action was unexpected because they had had “a wonderful
night.”  After the blow, the complainant
fell onto the bed where appellant “jumped on [her] and straddled [her] with his
knees . . . and proceeded to beat [her] [with his fists] in [her] face and
[her] head repeatedly for 40 to 45 minutes.” 
During the assault, appellant kept saying “I’m going to kill you,
Bitch.”  The complainant pleaded with him
to stop and screamed for help, but she could not get away because she was
pinned beneath appellant.  She explained
that because appellant was “crazy” and “[f]ull of rage,” she decided to “play
dead” to stay alive.  After she fell off
the bed, appellant kicked her to see if she would respond.  When she did not, appellant then went into
the bathroom and “calmly started washing the blood . . . off his hands and
arms.”  The complainant then got up and
ran screaming from the room.  She went to
the hotel office and found the night clerk, who called for emergency assistance.  After the complainant identified appellant as
her attacker, she explained that no one else had been in the hotel room during
the attack.  She also noted that
appellant did not have a girlfriend at the time of the assault.  Although she admitted to having had “two
drinks” on the night of the assault, she denied being intoxicated.

On cross-examination, the complainant
admitted that she had previously been convicted of aggravated robbery when she
was nineteen years old.  She conceded
that she had been seeing a pain management doctor for several years after
having back surgery, medical records showed that she had made numerous visits to
the pain doctor since the surgery, and she had been prescribed Loracet, Soma,
Valium, and Restoril for pain “as needed.”  However, the complainant denied taking any
medications on the night of the assault. 
She also denied that, after she and appellant had returned to the hotel
room from dinner, appellant left and returned with his girlfriend and asked the
complainant to have a “threesome.”  She further
denied kicking appellant in the groin and then being attacked by his girlfriend.  

          Galveston
County Sheriff (“GCS”) Deputy C. Dunn testified that on the evening of July 18,
2008, he was dispatched to the hotel’s office in response to the assault.  Upon his arrival, he saw the complainant being
treated by emergency services personnel. 
She had “injuries to her mouth . . . missing teeth . . . [b]oth of her
eyes were swollen shut . . . [and] a large amount of . . . dried blood in her
hair.”  The complainant told Dunn that her
attacker, her husband, was in the hotel room. 
Dunn found appellant alone in the room, and he saw no indication that
another person had been there.  Dunn noted
that appellant had “some scratches on him,” “blood on his shorts,” “blood
splattered on his glasses,” and recently washed his hands.  Dunn saw two wet, bloody towels in the
bathtub, “a large amount of blood” on the bed, the pillow, the side of the bed,
and the carpet,” “teeth in the bed,” and the handset to the phone cracked, with
a “bloody palm print” on it “as if somebody had used it as a weapon.”  Dunn noted that neither appellant nor the
complainant appeared intoxicated.  

Dunn explained that appellant had told
him that the person that had beaten his wife was his “girlfriend,” they had
fought, and he had broken up the fight.  Dunn
opined that, based on his experience, the injuries sustained by the complainant
were consistent with what she had told him and inconsistent with what appellant
had told him and the nature and extent of the complainant’s injuries were not
indicative of a “quick fight” between two women but an extended fight.

GCS Deputy S. Pathos testified that
he was dispatched to the hotel regarding the assault.  When he arrived, he saw that the complainant had
a “lot of blood” in her hair, one eye swollen shut, and a very swollen mouth.  He then went to the hotel room with Deputy
Dunn to interview appellant.  When they
walked in, Pathos saw blood on the carpet and door and the phone, which was off
the hook and broken.  Pathos pulled back
the covers on the bed and saw “a large amount of blood on the sheets [and] a
tooth on the bed.”  

Pathos described appellant as having
“an attitude” and being “real evasive.”  Although
appellant told Dunn that “his girlfriend” had attacked the complainant, Pathos
opined that, in his experience, the complainant’s injuries were not caused by a
fight between two women.  Pathos saw no
indication that another person had been in the hotel room, and he did not see any
other woman in the area.  Significantly,
when Dunn asked appellant about his “girlfriend,” appellant provided no name or
contact information for the woman.  

GCS Forensic Investigator Sergeant W.
O’Briant testified that he was dispatched to the hotel to collect evidence of
the assault.  Using photographs admitted
into evidence, he explained what he saw: blood on the phone with its broken
handset; blood splatter on the left lens of appellant’s glasses; blood on the
bed, the pillows, and the door handle to the room; wet, bloody towels in the
bathtub; a tooth on the bed; and blood stains on appellant’s lower legs and on
his blue jeans.  O’Briant had also taken
photographs of the complainant at the hospital where she had been taken.  He noted that her injuries consisted of
severe swelling around her eyes and facial area, bruising on her wrists and
forearms, and a small amount of bruising on her legs.  O’Briant opined that, in his experience, the
complainant’s injuries were inconsistent with having been inflicted by another
woman.  

Standard of Review

We review a trial court’s decision
not to reopen evidence under an abuse-of-discretion standard.  Gilmore
v. State, 792 S.W.2d 553, 554 (Tex. App.—Houston [1st Dist.] 1990, no pet.).  A trial court abuses its discretion when its
decision is arbitrary or unreasonable.  State v. Fury, 186 S.W.3d 67, 72 (Tex. App.—Houston
[1st Dist.] 2005, pet. ref’d).  The
question is whether the trial court “acted without reference to any guiding
rules or principles.”  Montgomery v. State, 810 S.W.2d 372, 380
(Tex. Crim. App. 1990) (op. on reh’g).

Request to Reopen Evidence

          In
his sole point of error, appellant argues that the trial court erred in denying
his motion to reopen the case to further cross-examine the complainant because evidence
of her statement “Bye-bye, Bitch,” made to appellant in open court, would have
revealed her motive to testify “less than truthfully” and “materially changed
the case in [his] favor.” 

At the conclusion of her testimony,
the trial court released the complainant but told her to “stay around.”  The State then rested, followed by appellant,
who did not call any witnesses.  After a
short break, defense counsel brought to the attention of the trial court that
the complainant, “as she left the courtroom, . . . told [appellant] ‘Bye-bye,
Bitch.’”  Defense counsel then asked to
reopen the evidence to allow him to call the complainant to ask her about the
comment because “it shows bias.”  The
trial court stated, “I think that she pretty much established bias.  Why is it important—why is it germane to the
case?”  Defense counsel urged that it
showed “she came in here with bad intent and she meant to lie . . . she’s
saying that she loves him . . . and then she’s over there whispering to him
‘Bye-bye, Bitch.’”  

The trial court denied defense
counsel’s request and cautioned the State to tell the complainant it would find
her in contempt if she did it again.  The
trial court immediately proceeded with its charge to the jury and the closing
arguments.  During his closing, defense
counsel highlighted the complainant’s behavior upon leaving the courtroom by
telling the jury, 

But did you see what she did when she left the
courtroom?  Did she just walk straight
out?  Or did she walk over to the
Defendant?  Ask yourself: What do you
think she said to him when she left the courtroom?  And why is she talking to him anyway?  It’s just other questions we have unanswered.

 

A trial court must “allow testimony
to be introduced at any time before the argument of a cause is concluded, if it
appears that it is necessary to a due administration of justice.”  Tex.
Code Crim. Proc. Ann. art. 36.02 (Vernon 2007).  The “due administration of justice” requires a
trial court to reopen a case if the evidence would materially change the case
in the proponent’s favor.  Peek v. State, 106 S.W.3d 72, 79 (Tex. Crim.
App. 2003).  The proffered evidence must
be more than just relevant; it must actually make a difference in the case.  Id.  Among the factors to be considered in
determining the materiality of evidence under article 36.02 are the weight of
the evidence, its probative value, the issue upon which it is offered, and
whether it is cumulative.  Id. at 77–78.  A trial court commits error when it denies a
motion to reopen to allow a witness to testify when the following criteria are
satisfied: (1) the witness is present and ready to testify; (2) the motion to
reopen is made before final arguments and before the charge is read to the
jury; (3) the movant states with specificity what testimony the witness is
expected to give and the importance that the testimony carries; and (4) it is
not apparent that the motion’s purpose is to frustrate the due administration
of justice.  Scott v. State, 597 S.W.2d 755, 758 (Tex. Crim. App. 1979).

Appellant asserts that the
complainant’s statement “Bye-bye, Bitch,” whispered to appellant as she left
the witness stand, “shows bias beyond the general bias that is attached against
one’s attacker” and was “calculated to send him to prison and not based upon
what actually occurred on the night in question.”  He further asserts that the statement
illustrates the complainant’s “intent and desire to obtain the maximum
punishment for Appellant.”  He argues
that cross-examining the complainant in front of the jury about her statement could
have made a material difference in the case because the jury would have heard
that the complainant “possessed a motive to testify less than truthfully . . .
whereas previously they had no other basis to infer any motive for her to
testify untruthfully.”  He notes that the
complainant was the State’s “star witness” and she vehemently denied the
existence of a third person in the room, which was appellant’s “primary, if not
only defense at trial.” 

In denying appellant’s motion, the
trial court indicated that it thought that the complainant had “pretty much
established [her] bias,” and it questioned the importance of the evidence to
the case.  The record reveals that the
complainant had already admitted to having been previously convicted of aggravated
robbery, being a frequent user of pain medications, and drinking alcohol on the
night of the assault.  She had also
asserted that because appellant was continually “dirty,” “filthy” and “greasy”
from his ironworking, no woman would want to be his girlfriend.  Thus, she clearly had established her bias
against and contempt for appellant. 
Nevertheless, we note that cross-examination is a cornerstone of the
criminal trial process such that an accused must be given wide latitude to
explore a witness’s story, to test the witness’s perceptions and memory, and to
impeach the witness’s credibility.  Gutierrez v. State, 764 S.W.2d 796, 799
(Tex. Crim. App. 1989).  Generally, great
latitude is to be allowed to an accused to show any fact “to establish ill feeling,
bias, motive, and animus on the part of any witness testifying against
him.”  Parker v. State, 657 S.W.2d 137, 139 (Tex. Crim. App. 1983)
(quoting Simmons v. State, 548 S.W.2d
386 (Tex. Crim. App. 1977)).  

However, even if appellant had been
allowed to cross-examine the complainant on the depth of her bias, we conclude
that this additional testimony would not have “actually ma[d]e a difference in
the case.”  Discounting the complainant’s
testimony that appellant was her attacker, the testimony of the police officers
about the nature of the complainant’s injuries and the physical evidence
provided overwhelming evidence that appellant assaulted the complainant.  Most important, when Deputies Dunn and Pathos
asked appellant about his “girlfriend,” he did not provide them with her name
or contact information.  Deputies Dunn
and Pathos testified that they did not see any indications of a third person
having been in the hotel room.  They
opined, based on their experiences, that the complainant’s injuries were not
inflicted in a fight between two women, as appellant had told them.  Sergeant O’Briant testified that he found
wet, bloody towels in the bathroom, appellant had blood on his eyeglasses,
legs, and pants, and appellant had recently washed his hands.  

Considering the entire record, the
weight of the evidence offered, its probative value, and the issue upon which
it was offered, the trial court did not abuse its discretion in implicitly concluding
that further cross-examination of the complainant on her bias against appellant
would not have “materially changed” the case in appellant’s favor.  Accordingly, we hold that the trial court did
not err in denying appellant’s motion to reopen the evidence.  See Peek,
106 S.W.3d at 79.

We overrule appellant’s sole point of
error.

Conclusion

          We
affirm the judgment of the trial court.

 

 

 

                                                                             Terry
Jennings

                                                                             Justice

 

Panel consists of Justices Jennings,
Hanks, and Bland

Do not publish.  Tex.
R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. § 22.01
(Vernon Supp. 2009).