

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00104-CR

_____

KENNEDY RILEY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 13F0131-202

Before Morriss, C.J., Moseley and Carter,* JJ.
Memorandum Opinion by Chief Justice Morriss

_____
*Jack Carter, Justice, Retired, Sitting by Assignment

# MEMORANDUM OPINION

According to testimony of Alicia Green, she and her boyfriend, Kennedy Riley, planned to relieve Troydricus Robinson of his "stash" of both drugs and money using the cover story of Green promising to exchange sex with Robinson for some of his "weed." As her version went, when Green expressed doubts about the plan, Riley said he "would have to shoot him then." Robinson was ultimately shot dead, and Riley was tried and convicted by a Bowie County jury for his capital murder, with trial testimony from Green, Riley's acknowledged accomplice. From a sentence of life imprisonment, Riley appeals, claiming insufficient corroboration of accomplice testimony, error in the denial of his motion for directed verdict, improper limitation of his cross- examinations of Green and Kennial Jacobs, improper admission of an audio recording of an alleged telephone call between Riley and Green, and jury-charge error in failing to properly apply the accomplice-witness instruction to the facts of the case.

We affirm the trial court's judgment because: (1) non-accomplice evidence sufficiently corroborates Green's testimony; (2) denying Riley's motion for directed verdict was proper; (3) limiting Riley's cross-examination of Green was not an abuse of discretion; (4) excluding evidence of Jacobs' criminal charge was within the trial court's discretion; (5) no error was preserved regarding the admission of the audio recording; and (6) the charge sufficiently applied the accomplice-witness instruction to the facts of the case.

*(1)     Non-Accomplice Evidence Sufficiently Corroborates Green's Testimony*

Pursuant to the robbery plan described by Green, Green went to Robinson's location, smoked part of a marihuana cigarette, and was getting nervous. Riley, wearing "a white wife-

2

beater with some black shorts," came in through the back door and pointed a gun at Robinson. Riley ordered Robinson to lie on the floor and demanded money. Robinson said he only had $40.00 in his pockets, and Riley said, "You think I'm playing, you think this is a joke, you don't think I would shoot you." Green confirmed that when she and Riley were "talking back and forth," Robinson took the opportunity to try to escape through the front door. Riley shot him as he reached the door, and Robinson staggered against the wall. Green and Riley then fled out the back door.

Other testimony established that Robinson, shot through the upper torso, made his way to Joseph Frost's house across the street and loudly banged on the door. Not granted entrance immediately, he moved to the end of the driveway of that house and collapsed. Robinson remained alive long enough to make short statements to several first responders. Frost testified that he asked Robinson who had shot him and quoted Robinson as saying a lady came to his door and that a man with a do-rag followed her into his house. When Officer Rusty McDuffie arrived, he saw that Robinson had blood on his arms, face, and shirt and that he was having trouble breathing. He quoted Robinson as reporting that he had been shot and robbed and that "old boy, old girl set him up." Officer Jacob Foster also spoke with Robinson and quoted him as reporting that a black woman wearing a purple shirt and stockings set him up and a black man wearing a white tank top, black shorts, and a black bandana or do-rag shot him. Wake Village Fire Chief James Guyton, who was assisting the emergency medical personnel, quoted Robinson as reporting that the "bitch," who had a name sounding something like Tisha, "set me up" and that a guy with her "had on a

3

bandana and a beater."[1]  However, Guyton admitted that Robinson never told him whether the people he was talking about were black or white.

Shameetrice Gomer testified that, about an hour before the shooting, Riley and Green came to her residence and stayed for about forty-five minutes.  Gomer remembered that they arrived in Riley's car, a gray Chevrolet Caprice; that Riley was wearing a white "wife-beater" tank-top with dark-colored blue jean shorts; and that Green was wearing "leg tights."  Gary Stringer, a neighbor and retired police officer who lived just down the street from the location of the shooting, testified (1) that at around 10:00 p.m. that evening, he saw a "grayish Caprice" with an out-of-state license plate, which was identified by other, non-accomplice witnesses as Riley's car, acting suspiciously with its lights off, being parked just down the street from the shooting location; (2) that, shortly after the car was parked, a black man[2] wearing a white tank top and black shorts, who could have been Riley, was seen standing at the rear of the vehicle and then walking in the direction of the shooting location; (3) that the car had New Mexico license plates part of which looked like "Z67"—Riley's plates, instead, partially read "267"—and (4) that, as of 11:00 p.m. that night, the car had been moved away, but Stringer did not see who moved it.  Wake Village Police Chief Ronny Sharp testified that the investigation revealed a large number of contacts between Green's cell phone and Robinson's cell phone in the hours before the shooting.

Green's mother, Kennial Jacobs, testified that, after Green called her at 9:00 or 10:00 p.m. the night of the shooting, the mother drove to Guam Street and picked up Riley and Green near

---

[1]Guyton testified that "beater" is a nickname for a white, tank-top-style t-shirt.

[2]Kennedy Riley was identified as being African American.

4

some apartments located a few blocks from Robinson's house. She testified that Green was wearing black tights and a light-colored top and Riley was wearing "dark blue jean shorts and a white wife-beater." She noticed that Green had been crying and that "she was scared." Riley took off his shirt and put on a different one. The mother took them to Riley's car, which was parked less than two blocks from the victim's house. In addition, the jury heard a recording of a telephone conversation between Green and Riley, made while she was in custody, that could be interpreted as confirming they were trying to cover up their involvement in the shooting.

Although Riley did not testify at trial, his attorney aggressively cross-examined every witness in an attempt to impeach their credibility and to contest Riley's involvement in the case. For instance, in cross-examination of Green, he focused on her plea agreement with the State and the multiple, contradictory statements that Green had given the police that, at first, denied involvement and, finally, implicated Riley as the one who pulled the trigger. Riley pointed out that Jacobs had labeled Green a "habitual liar," that Jacobs did not like Riley, and that she would do whatever it took to keep Green away from him. In addition, the jury heard the recorded statement of Riley in which he repeatedly denied any involvement, as he did in the telephone conversation with Green.

Riley argues that Green's testimony was not sufficiently corroborated to satisfy the accomplice-witness rule: "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). When evaluating the sufficiency of corroborating

5

evidence under Article 38.14, we "eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). The tends-to-connect standard does not present a high threshold as the "evidence need not prove the defendant's guilt beyond a reasonable doubt by itself." *Id.*; *see Cantelon v. State*, 85 S.W.3d 457, 461 (Tex. App.—Austin 2002, no pet.). "Rather, the evidence must simply link the accused in some way to the commission of the crime." *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008).

> No precise rule can be formulated as to the amount of evidence required to corroborate. The non-accomplice evidence does not need to be in itself sufficient to establish guilt beyond a reasonable doubt. Nor must the non-accomplice evidence directly link the accused to the commission of the offense. While the accused's mere presence in the company of the accomplice before, during, and after the commission of the offense is insufficient by itself to corroborate accomplice testimony, evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense. Even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration.

*Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996) (citations omitted).

Here, there is evidence tending to connect Riley with Robinson's murder. Stringer saw a car, later identified as Riley's car, being driven suspiciously and parked two blocks away from Robinson's house. He saw a black man wearing a white tank top and black shorts walk toward Robinson's house. In his dying declarations, Robinson told Frost and various first responders that a girl wearing stockings had set him up and that a black man wearing a white tank top, black shorts, and a black bandana had shot him. When Gomer saw Riley and Green earlier that night, she remembered Green and Riley wearing clothes consistent with Robinson's description of the pair

6

involved in his shooting. Green's testimony was sufficiently corroborated. Accordingly, we overrule this point of error.

*(2)  Denying Riley's Motion for Directed Verdict Was Proper*

Riley also argues that, because Green's testimony was not sufficiently corroborated, the trial court erred in denying his motion for directed verdict. Because Green's testimony was sufficiently corroborated, a directed verdict was not in order. We overrule this point of error.

*(3)  Limiting Riley's Cross-Examination of Green Was Not an Abuse of Discretion*

Riley also urges that the trial court improperly limited his cross examination of Green. At trial, the State asked Green about the plea agreement she reached with the State:

> Q.      Did you, on having the support and advice of counsel, and I believe it was Jason Horton, did you make the decision to change your plea from not guilty to guilty to the charge of murder and serve a twenty year sentence in the state penitentiary?
>
> A.      Yes, sir.
>
> Q.      And was that decision made by you and your attorney before any discussion with me or any member from the Bowie County District Attorney's Office?  . . . Did you tell me your story before or after you entered your plea of guilty?
>
> A.      After I entered my plea of guilty.
>
> Q.      All right. I want to make sure the jury understands that you and I had no conversation --
>
> A.      Right.
>
> Q.      -- until you and your lawyer decided to change your plea. Is that correct?
>
> A.      Yes, sir, that's correct.
>
> Q.      And at no point in time did I try to influence you before your agreement that you made to change your plea?

7

A.   No, sir.

Q.   As it relates to the information that you gave after you entered your plea, what was the only demand I made to you when we talked?

A.   You told me to just tell the truth.

Q.   And is that what you're here to do today?

A.   Yes, sir.

Q.   And when we spoke after you entered your plea, was your attorney, Jason Horton, present at that time?

A.   Yes, sir.

Q.   And in fact, we spoke I believe on several occasions that we made sure he was present.  Is that correct?

A.   Right.  Yes, sir.

Q.   Your rights have been protected throughout this process.  Is that correct?

A.   Yes, sir.

On cross-examination, the following colloquy occurred:

Q.   Okay.  Mr. Shepherd just asked you did you ever talk to him before you pled guilty and you said no.

A.   Right

Q.   Did you ever authorize your attorney to advise the DA --?

[THE STATE]:   Your Honor, the State is going to object to any conversation regarding -- I believe we need to approach on this matter, Judge.  I don't want to put this in front of the jury.

The State objected, arguing that Riley could not inquire as to plea negotiations among Green,

Green's counsel, and the State.  Riley argued that Green's testimony on direct examination gave

8

the jury the false impression that she pled guilty and testified without first agreeing to a twenty-year sentence. To counter the alleged false impression, Riley argued, he was "entitled to ask her did she ever authorize anybody to tell [the State] she would testify in return for a twenty year sentence. That is part of the plea bargain." The trial court held that Riley could ask about the plea agreement and establish that "she's got an agreement with [the State]," but the court prevented Riley from inquiring as to "the process" of reaching the plea agreement.

The State contends that Riley failed to preserve this issue because he failed to make an offer of proof. *See* TEX. R. EVID. 103(a)(2); *Mays v. State*, 285 S.W.3d 884, 889–90 (Tex. Crim. App. 2009); *Love v. State*, 861 S.W.2d 899, 903 (Tex. Crim. App. 1993); *Duke v. State*, 365 S.W.3d 722, 725–26 (Tex. App.—Texarkana 2012, pet. ref'd). However, because the presence and terms of a plea agreement could affect Green's credibility as a witness and Riley informed the trial court of the "general subject matter he desired to examine the witness about during his cross-examination," he preserved this issue for our review.[3] *See Holmes*, 323 S.W.3d at 169.

"A primary interest secured by the Confrontation Clause is the right of cross-examination." *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000); *see Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). The scope of cross-examination is necessarily broad and includes

---

[3] In cases where a defendant is not permitted to cross-examine a State's witness about matters relating to the credibility of the witness' substantive testimony, the defendant must make the trial court aware of what his cross-examination of the witness would have established in order to preserve the issue for appellate review. *Holmes v. State*, 323 S.W.3d 163, 168–70 (Tex. Crim. App. 2010). However, in order to preserve error in cases where the defendant is not permitted to cross-examine a State's witness about matters that might affect the witness' overall credibility—"that is, matters which might show malice, ill feeling, ill will, bias, prejudice, or animus"—the defendant need not make a formal offer of proof, but "must merely establish what general subject matter he desired to examine the witness about during his cross-examination and, if challenged, show on the record why such should be admitted into evidence." *Id.* at 169 (quoting *Virts v. State*, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987)).

9

the right to show possible bias, self-interest, inconsistent statements, motives in testifying, as well as evidence that might go to any character traits, impairment, or disability affecting the witness's credibility. *Carroll*, 916 S.W.2d at 497; *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009); *Virts v. State*, 739 S.W.2d 25 (Tex. Crim. App. 2014). Riley contends that his right to confront Green was infringed when the trial court limited the scope of his cross-examination.

A trial court's decision to admit or exclude evidence is reviewed only for abuse of discretion. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007); *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005); *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). A trial court does not abuse its discretion if the decision to exclude evidence is within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g); *Marsh v. State*, 343 S.W.3d 475, 478 (Tex. App.—Texarkana 2011, pet. ref'd). So long as a decision falls within that zone, we may not substitute our own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). If the trial court's decision on the exclusion of evidence is supported by the record, there is no abuse of discretion, and the trial court will not be reversed. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002); *Montgomery*, 810 S.W.2d at 379.

"The constitutionally-protected rights to confrontation and cross-examination are not absolute." *Lempar v. State*, 191 S.W.3d 230, 237 (Tex. App.—San Antonio 2005, pet. ref'd). A defendant does not have a right to "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). While a defendant has a

10

constitutional right to cross-examine a witness, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679; *see Lopez*, 18 S.W.3d at 222.

In support of his argument, Riley cites *Parker v. State*, where the Texas Court of Criminal Appeals held that the trial court committed reversible error in limiting Parker's cross-examination of an alleged accomplice witness by preventing Parker from showing that robbery charges against the witness had been dismissed or retired and that he reached a plea agreement with the State on other charges shortly before trial. *Parker v. State*, 657 S.W.2d 137, 138–39, 141 (Tex. Crim. App. 1983) (en banc). However, the court did not hold that Parker should have been allowed to inquire as to the plea negotiations themselves, and therefore, the facts and holding of *Parker* are distinguishable. *Id*. at 141.

Here, the trial court properly allowed Riley to establish that Green had a plea agreement with the State and did not prevent him from inquiring as to the plea agreement and its terms or conditions. *See id.* The trial court prevented Riley from cross-examining Green only regarding the negotiations leading to her agreement with the State. Riley has failed to cite any authority entitling him to inquire as to the plea negotiations under these circumstances, and we are aware of none. Based on the foregoing, we are unable to say that the trial court abused its discretion.

We overrule this point of error

11

*(4)	Excluding Evidence of Jacobs' Criminal Charge Was within the Trial Court's Discretion*

Similarly, Riley contends that the trial court improperly limited his cross-examination of Green's mother, Kennial Jacobs, by preventing him from inquiring as to the criminal charge pending against her at the time of her testimony.

As detailed above, a trial court's decision to admit or exclude evidence is reviewed only for an abuse of discretion. *Cameron*, 241 S.W.3d at 19; *McDonald*, 179 S.W.3d at 576; *Willover*, 70 S.W.3d at 845.

On Riley's cross-examination of Jacobs, the following colloquy occurred during a bench conference:

> [Defense Counsel]: Judge, this witness [Kennial Jacobs] has an unauthorized use of a motor vehicle charge pending against her in this Court that was referred to the grand jury in August of 2014. Nothing has been done on that charge. It's my position that I think I can ask this witness about that because that could be bias to testify for the State. They're holding a charge over her that could put her in the penitentiary, and there's been absolutely nothing done on that charge for about a year.
>
> THE COURT: Response?
>
> [State's Attorney]: Your Honor, obviously, this is not a conviction to be used for impeachment. Our position is that her testimony today is consistent with what it was previously. This incident he's talking about has happened in the interim, and any prejudicial effect outweighs any probative value.
>
> THE COURT: All right. The Court is going to overrule the Defendant's objections on the basis of, one, the Court followed her testimony and it's the exact testimony she gave when she previously testified. Before this trial, she testified consistently with it. She testified voluntarily at that trial. Her position has not changed any since the first trial, so any probative value would be outweighed by the prejudicial effect.
>
> [Defense Counsel]: So you're saying I cannot get into it? Is that correct?

12

THE COURT: Well, because it's not a final conviction under 609.

On appeal, Riley relies on his trial argument that the trial court erred in excluding the evidence because it was evidence of bias. However, the trial court's ruling was that the charge pending against Jacobs was not a final conviction under Rule 609 and that under Rule 403, any probative value of the evidence would be substantially outweighed by its prejudicial effect. *See* TEX. R. EVID. 403, 609(a)(2). Even if the evidence were relevant to show bias, Riley's argument on appeal fails to address or challenge the trial court's discretionary ruling that the evidence is inadmissible under Rules 403 and 609. *See McDonald*, 179 S.W.3d at 576 (trial court's decision to admit or exclude evidence reviewed only for abuse of discretion);[4] *Willover*, 70 S.W.3d at 845.

If the trial court's adverse ruling can be sustained on more than one basis, an appellant must address and attack each independent basis for the ruling on appeal. *Marsh*, 343 S.W.3d at 479 (citing *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980) (defendant must challenge each ground supporting trial court's ruling against defendant, as any sufficient ground supports trial court's order)). We will not make the appellant's arguments for him. *See Marsh*, 343 S.W.3d at 479. If an appellant does not assign error on an independent ground that supports the complained-of ruling or judgment, it stands accepted, and thus any error in the ground urged on appeal is harmless. *See Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980); *Marsh*, 343 S.W.3d at 479; *State v. Sandoval*, 842 S.W.2d 782, 785 (Tex. App.—

---

[4]We will uphold the trial court's ruling on the admission or exclusion of evidence if the ruling was proper under any legal theory or basis applicable to the case. *See Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002).

Corpus Christi 1992, pet. ref'd). Because Riley failed to challenge the trial court's Rule 403 and 609 rulings, we overrule this issue as harmless.

*(5)     No Error Was Preserved Regarding the Admission of the Audio Recording*

The jury heard a recording of a telephone conversation between Green and Riley made while she was in custody. Riley argues that the trial court erred in admitting the recording because the State failed to lay a proper foundation to establish its accuracy, authenticity, and admissibility.

During examination by the State, Green testified that, after she was arrested, she made a telephone call to Riley and was aware that the call was being recorded. After reviewing the recording, she confirmed that the two voices heard in the recording were hers and Riley's; that during the call, she "basically [told] him to leave town"; and that the recording had not been tampered with in any way. The State then offered the recording into evidence as State's Exhibit 54. Riley's objection and the court's ruling were as follows:

> [Defense Counsel]:  Judge, we would object to the hearsay statements. We would also say this witness is here and she can testify as to what would be the contents of the telephone call.
>
> THE COURT:  Well, first off, as it relates to hearsay, she's here to testify. I mean, she testified to it. It's not hearsay as it relates to her. Two, based on the contents, and there are certain statements in there that are potentially statements against penal interest, which falls within the hearsay exception. So the Court, taking that and the arguments as previously discussed, would overrule that objection and admit 54.

In order to preserve a complaint for appellate review, a defendant must present to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1); *Morales v. State*, 951 S.W.2d 59, 62 (Tex. App.—Corpus Christi 1997, no pet.).

14

"[A] party's objection must inform the trial court why or on what basis the otherwise admissible evidence should be excluded." *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009). The complaining party must obtain an adverse ruling from the trial court. *DeRusse v. State*, 579 S.W.2d 224, 235 (Tex. Crim. App. [Panel Op.] 1979).

Points of error on appeal must correspond or comport with objections and arguments made at trial. *Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd) (citing *Dixon v. State*, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998)). "Where a trial objection does not comport with the issue raised on appeal, the appellant has preserved nothing for review." *Id.*; *see* Tex. R. App. P. 33.1; *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999).

Here, Riley contends that the recording was inadmissible because the State failed to establish a proper foundation for the evidence. His trial objection was based on hearsay. Because the two grounds do not correspond, this point of error was not preserved for our review.[5]

*(6)*     *The Charge Sufficiently Applied the Accomplice-Witness Instruction to the Facts of the Case*

In his final point of error, Riley argues that the jury charge "failed to properly apply the accomplice witness instruction in the abstract portion of the charge to the facts of the case in the application portion of the charge."

---

[5]Earlier in the trial, Riley questioned Sharp on voir dire regarding the particulars of how the telephone call was recorded. After the conclusion of Sharp's voir dire testimony, Riley argued that Sharp had failed to properly authenticate the recording. The trial court said, "I'm not going to admit it at this point in time anyhow until it's been proved up, and like I say, that's not the issue that's before the Court at this time. It's only been marked for identification." Riley failed to obtain a ruling on his objection, and because he also failed to renew this objection at the time the recording was admitted into evidence, this objection was not preserved for our review. *See DeRusse*, 579 S.W.2d at 235 (complaining party must obtain ruling on objection); *Clay v. State*, 361 S.W.3d 762, 766 (Tex. App.—Fort Worth 2012, no pet.) (citing *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)) (defendant must object each time inadmissible evidence is offered); *Long v. State*, 10 S.W.3d 389, 399 (Tex. App.—Texarkana 2000, pet. ref'd).

We employ a two-step process in our review of alleged jury charge error. *See Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32).

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007). "A trial court must submit a charge setting forth the 'law applicable to the case.'" *Lee v. State*, 415 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007)). "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application. It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion." *Id.* (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

The application paragraph of a jury charge specifies "the factual circumstances under which the jury should convict or acquit[, and it is] the 'heart and soul' of the jury charge." *Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012). "A charge that does not apply the law to the facts fails to lead the jury to the threshold of its duty: to decide those fact issues." *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977).

The pertinent portion of the charge in this case read:

> You are instructed that an "accomplice," as the term is hereinafter used, means any person connected with the crime charged, as a party thereto, and includes all persons who are connected with the crime, as such parties, by unlawful act or

omission on their part transpiring either before or during the time of the commission of the offense.

The witness[,] Alicia Green, is an accomplice as a matter of law, if an offense was committed. You cannot convict the defendant on her testimony unless you first believe that her testimony is true and shows that the defendant is guilty as charged, and then you cannot convict the defendant on said testimony unless you further believe that there is other testimony in the case, outside the evidence of Alicia Green, which tends to connect the defendant with the offense committed, if you find that an offense was committed. The corroboration is not sufficient if it merely shows the commission of the offense; it must also tend to connect the defendant with its commission, and then from all of the evidence you must believe beyond a reasonable doubt that the defendant is guilty of the offense charged against him.

Here the charge gives the definition of accomplice, states that Green is an accomplice as a matter of law, and applies the accomplice-witness instruction to the facts of the case by explaining to the jury the limited factual determinations that allow them to convict Riley.[6] It sufficiently covers Riley's request. Therefore, no jury charge error occurred. *See Wilson*, 391 S.W.3d at 138. We overrule this point of error and affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:      April 5, 2016
Date Decided:        May 25, 2016

Do Not Publish

---

[6]Riley argues that the application paragraph should have applied the accomplice witness instruction to the facts of the case by instructing the jury that it:

> must acquit Appellant if it: 1) believed Alicia Green's testimony, and that her testimony established Appellant's guilt as charged in the indictment, but it did not believe her testimony was sufficiently corroborated; or 2) if it did not believe Alicia Green's testimony, and her testimony did not show Appellant's guilt as charged in the indictment, and her testimony was corroborated and tended to connect Appellant with the offense charged.

However, Riley cites no authority for requiring such an acquittal-specific instruction, and we are aware of none.